959 F.2d 238
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
DIAL MACHINE & TOOL, INC., Plaintiff-Appellant,
v.
A.M. GENERAL CORPORATION, Defendant-Appellee.
 No. 90-2240.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 31, 1991.
Decided April 2, 1992.
 
 Before CUMMINGS and MANION, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 
 ORDER
 
 1
 Dial Machine & Tool, Inc. filed a three-count complaint against AM General Corporation. The first two counts raised state-law claims based on breach of contract and fraud. The third count raised a claim under 42 U.S.C. § 1981 for alleged racial discrimination. The district court granted AM General's Fed.R.Civ.P. 12(c) motion for judgment on the pleadings on the § 1981 claim, dismissed the state-law claims without prejudice pursuant to United Mineworkers of America v. Gibbs, 383 U.S. 715 (1966), and entered final judgment. Dial appeals the district court's decision to dismiss its § 1981 claim. For the following reasons, we affirm.
 
 
 2
 Dial's complaint alleged the following facts, which we must accept as true. See Republic Steel Corp. v. Pennsylvania Engineering Corp., 785 F.2d 174, 182-83 (7th Cir.1986). In June, 1984, AM General issued two blanket purchase orders to buy parts for the Hummer vehicle from Dial. Each purchase order included an economic price adjustment clause (EPA) which entitled Dial to annual price increases based on inflation. In early 1987, AM General decided it wanted Dial to hold its prices flat, so it asked Dial to modify the purchase orders to delete the EPAs. When Dial refused, AM General unilaterally modified the purchase orders (that is, it decided not to pay the increased prices the EPAs called for) and eventually canceled the purchase orders before the end of the 5-year term.
 
 
 3
 Dial's majority shareholder is black. Dial alleged that AM General treated Dial differently from white-owned businesses by demanding deletion of the EPAs, unilaterally deciding to discontinue paying inflation-adjusted prices, and canceling the purchase orders. This alleged discrimination formed the basis for Dial's § 1981 claim.[1]
 
 
 4
 The district court held that the Supreme Court's decision in Patterson McLean Credit Union, 491 U.S. 164 (1989), barred Dial's § 1981 claim. We agree. Section 1981 states, in relevant part:
 
 
 5
 All persons within the jurisdiction of the United States shall have the same right--to ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens....
 
 
 6
 In Patterson, the Court read § 1981 literally, holding that it protects two rights: the right to make contracts, and the right to enforce contracts.
 
 
 7
 Since Dial does not allege that AM General violated its right to enforce the purchase orders, its § 1981 claim depends on a violation of its right to make a contract with AM General. But after Patterson, § 1981's protection of the right to make a contract
 
 
 8
 extends only to the formation of a contract but not to problems that may arise later.... The statute prohibits ... the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms.... [It] does not extend, as a matter of either logic or semantics, to conduct ... after the contract relation has been established, including breach of the terms of the contract....
 
 
 9
 Patterson, 491 U.S. at 176-77; see also id. at 183. Moreover, even though Patterson involved an employment contract, its holding, like § 1981 itself, applies to "all types of contracts, not just employment contracts." Id. at 183; see also Gersman v. Group Health Ass'n, Inc., 931 F.2d 1565, 1570 (D.C.Cir.1991).
 
 
 10
 Patterson plainly forecloses any § 1981 claim based on Dial's allegation that AM General breached the purchase orders by disregarding the EPAs and refusing to make inflation-adjusted payments. Cases after Patterson have also held that Patterson bars claims based on contract terminations. See McKnight v. General Motors Corp., 908 F.2d 104, 108-09 (7th Cir.1990); Gersman, 931 F.2d at 1571-72. These holdings bar any § 1981 claim based on AM General's canceling the purchase orders.
 
 
 11
 Dial pins its hopes on the fact that before unilaterally deciding to disregard the EPAs and, ultimately, canceling the purchase orders, AM General asked Dial to modify the purchase orders to delete the EPAs. Dial argues that under Indiana law, a modification to a contract is itself a contract. Thus, says Dial, by offering Dial the modification, AM General was offering to enter a new contract. This supposedly brings AM General's allegedly discriminatory action within Patterson's statement that § 1981 "prohibits ... the offer to make a contract only on discriminatory terms." 109 S.Ct. at 2372.
 
 
 12
 While Dial's argument has some semantic basis, we agree with the district court's assessment that Dial attempts to draw too fine a line between what § 1981 allows and prohibits. Where there is no existing contractual relationship between two parties, and one party offers the other a contract on discriminatory terms, the discrimination hurts the offeree whether he accepts or rejects the offer. If he accepts, he must work under discriminatory terms; if he rejects, he has no contract. The offer of a discriminatory contract, not a breach of contract, directly caused the offeree's damage.
 
 
 13
 In our case, however, the purchase orders had already established a contractual relationship between Dial and AM General. The terms of the contract did not change when Dial refused AM General's allegedly discriminatory request to modify the purchase orders to delete the EPAs. If AM General had abided by the EPAs, Dial would not have been damaged. The request for modification did not damage Dial; rather, AM General's subsequent decisions not to abide by the EPAs and to cancel the purchase orders injured Dial. AM General's request to modify the contract amounted to nothing more than an advance warning to Dial that it might breach the contract. That warning does not change the fact that the only rights AM General violated were Dial's rights under the existing contract. At bottom, then, Dial's action is simply one for discriminatory breach of contract. After Patterson, that kind of conduct does not violate § 1981. Therefore, we affirm the district court's decision.[2]
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 An issue neither party has addressed on appeal is whether a corporation such as Dial has standing to sue under § 1981 based on the race of its owners. In Triad Assocs. Inc. v. Chicago Housing Authority, 892 F.2d 583, 591 (7th Cir.1989), we held that a corporation had standing to sue for racial discrimination under the Equal Protection Clause based on the race of its owners. Subsequently, the D.C. Circuit has held that a corporation had standing to sue under § 1981. Gersman v. Group Health Ass'n, Inc., 931 F.2d 1565, 1567-70 (D.C.Cir.1991). These cases answer any questions about Dial's standing in this case
 
 
 [2]
 The Civil Rights Act of 1991, Pub.L. 102-166 § 101 (November 21, 1991) has arguably overruled Patterson. However, Dial has not since oral argument requested any further briefing or argument on whether the Act applies retroactively. Therefore, we consider Dial to have waived the argument. Cf. Partee v. Metropolitan School Dist. of Washington Twp., No. 90-2132, slip op. at 5 n. 1 (7th Cir. Jan. 21, 1992)